What's your argument next in Mayo v. Zucker et al., Sylvester v. 2272? Hold on a second. Good morning, Your Honor. May it please the Court, my name is Louis Maone. I am the attorney for the appellants in this matter. The seminal question before the Court is whether the Second Amendment complaint stated a plausible claim. And the answer clearly is yes. Both the appellant's brief and our reply brief provide legal precedent for allowing District Court to go forward on a plausible claim, even when there have been multiple pleadings. The plaintiffs stated more than a multiple plausible claim in this matter. Judge Karras in the District Court invited the plaintiffs to submit any documents that they wanted to support their claim. And, in fact, they did that. Exhibits A to F of the complaint were the documents by which the family applied to the county of Rockland for Medicaid coverage, what they thought was Medicaid coverage. And together with those exhibits, the plaintiff's mother, Tasha Osler, submitted a declaration explaining what had happened. SSI got in touch with her when the children were born prematurely, told her to apply for Medicaid, which she did, except that the county third-party administrator said, we're going to put you, we're going to allow you to use your private insurance. Why? It's cost-effective for the State. Not for them, for the State. And so they provided documentation for her to fill out and to put in. One of those was this FH Plus program. She didn't ask to be in that. The fact of the matter is, as a Medicaid-qualified family, they're not entitled to be on that. But this is what happened. The State put them into this hybrid program, if you will, where they're a Medicaid-qualified family. These children, these infants under EPSDT cannot pay court-sharing expenses or co-pays, but they are. Why? Because the State insists that they use their Medicaid card when they go to the doctor, except they're in a program and they're in this network where they go to doctors who do not take the Medicaid card. They're not going to take it. I'm sorry to interrupt, but I want to connect, because you're describing what's well-described in the briefs as the issue that created all of this. Where I struggle a little bit is to try to connect the story to the legal claims that we have before us. And so when I look at the complaint, two of the claims are due process, procedural due process claims, which are not about whether it's right or wrong that they were charged the expenses. They're about whether there was an adequate process within the New York framework for them to litigate about that. The third claim, which is maybe what you're talking about, is the statutory claim under the federal statute. Is that where you're taking us now, that you're asking us to adjudicate that the State's administration of this federal-state hybrid program is unlawful according to federal law? That, among others, Your Honor, but I think that you're entitled, if the State abrogates a benefit that you're entitled to under federal law, I think you're entitled to make a 1983 claim. And that's a deprivation of due process when they take your property rights from you. Those property rights are the money that these people, these infants have to pay. So usually the due process, when I think of a due process claim, I think of what we call procedural due process. You're taking my property, which is a protected thing, and you're doing it without appropriate procedures. Are you making an argument that it doesn't matter what the procedures are that they provide as a matter of constitutional law? It's a violation of, I guess, what we might call substantive due process to take that property, no matter how much – how many hearings you have? Yes, Your Honor, and I think there's – we cited cases for it, including Dixon v. Hood, which this is precisely what happened in Dixon v. Hood. But getting back to where I was, the Family Health Program, which was repealed in 2015 by the Affordable Care Act, does not allow Medicaid-qualified families to be in that program. So have there been any charges – I totally understand the benefits that should have been paid, in your view, that racked up prior to 2015. One of the things I'm trying to understand, and this I think goes to the question of whether there's a live injunctive claim here, is this program ongoing and has it been ongoing since 2015, and are there claims of charges that fit within the scope of your complaint that were assessed to your clients since 2015, or at this point are we backwards looking, trying to make your clients whole with money, but there's not a prospective relief that you're seeking? The answer to that, Your Honor, is yes. They've been made – every month, by the way, every single month, they get reimbursed their premium. Even now? Even to this day. And I'll hold that thought for a moment. So have they racked up – are there what you would call damages in your 1983 claim since 2015? Yes, absolutely. Every time they go to the doctor and they have to pay co-pays or cost-sharing expenses, they don't get reimbursed. Now, I guess you could say – excuse me, Your Honor – anecdotally, I found out just last evening, talking to them, that they got a letter recently from the state that says when the state of New York repeals this emergency situation with COVID-19, they are not going to be able to use their insurance anymore, their private insurance, because it's no longer cost-effective. So what is going to happen? They are going to have to choose among – I think there's four in New York State – Medicaid HMO programs. That's what they're going to have to do. And then they're going to go to a doctor, and then they will be able to use their Medicaid card, and they won't put a penny out of their pocket just as they're not supposed to put a penny out of their pocket. Now, what changed? Nothing. Nothing changed. They're still a Medicaid family. These children are still Medicaid recipients entitled to EPSDT benefits. And under EPSDT, children are never to pay co-pays or cost-sharing expenses, which they have been made to do. So to the extent that you're suing some of these defendants in their official capacities, is that right? Yes, Your Honor. Excuse me. Are you okay? What you just said or suggested is that you're looking for damages. You're looking for money. That's the form of relief ultimately that you're – Yes, of course, Your Honor. Why isn't that barred by the 11th Amendment? Why isn't that claim against them in their official capacities not barred by the 11th Amendment? Because I think, Your Honor, at least we've briefed it. I think there are many cases that say – I think Wilder v. Virginia Hospital and the Second Circuit in New York Citizens v. Poole said that you can sue a state when you have a 1983 claim, and that's exactly what we've done. Can I – Not always. You can sue a state when you're trying to get prospective injunctive relief, right? Excuse me? You can sue a state when you're trying to get prospective injunctive relief, right? Yes, and we've asked that, too. They have to stop doing this, but maybe it's going to become – You said they have to stop doing this, your time with the withholding of the reimbursement. Yes, Your Honor. And maybe it's going to stop – it's going to become a moot point because they're telling – they're telling us now that as soon as this – as soon as this period is over, they're not going to be able to use their private insurance because it's no longer cost-effective, as I said a bit earlier. So they're going to have to go to an HMO. But right now you're saying it's not – No, right now – Right now you're saying you have a claim for prospective injunctive relief as to this project. Yes, yes, and I think it's $130,000. No, no, that's not prospective injunctive relief, right? $130,000 is kind of a retrospective thing, right? Prospective injunctive relief means – Oh, yes, yes. Well, we sued it was prospective because they still weren't doing it. But what about now? To this day? In answer to my question, I thought you were asking – you said you want relief in the form of money, funding, right? And, yes, and for them to reimburse as they're supposed to. But those are all forms of damages. So I don't really see – I'm trying to understand. It's one thing if a claimant asks for – uses the magic words prospective injunctive relief, but then everything that follows is actually a form of a request for damages. And that's my concern right now is that all that I hear and all that I see fundamentally when I look past the labels is you – and I totally, completely understand and I'm sympathetic, but you're asking for funding. That's ultimately what you're asking for on behalf of these children. I don't think it's funding, Your Honor. It's the money that they should have been paid as Medicaid recipients. Okay, money. You're asking for money. Right. And they've been deprived of their money by the state because the state put them in this situation. Whatever you want to call it, a hybrid – I have another housekeeping matter, which is just a very small one, but maybe not. Otto? Is that how you pronounce the name? Otto? Otto, yes, I believe so. So she was a defendant in the original complaint, but not – she's not named in the second amendment complaint. Is that correct? Yes. But your notice of appeal, you only appeal from the second amended complaint. Is that correct? Yes, Your Honor. So you – is that a problem for you? No. With respect to Otto? No. It's not a problem, okay. But you agree that you're only appealing from the dismissal of the second amended complaint? Exactly, Your Honor. And I was not involved in this case. No, I'm not blaming anyone. No, no, no. That's fine. It's a housekeeping matter. It was all pro se up until the second amended complaint. I guess this is what happens when you're called into duty by your children. Thank you, Your Honor. All right, thank you. Why don't you get a sip of water, and we'll hear from the other side. Thank you. Good morning, and may it please the Court. Elizabeth Brody for the State Appellees. This Court should affirm the District Court's decision because plaintiffs' claims for an additional $90,000 in transportation and out-of-pocket expenses are barred by sovereign immunity, as this panel has already noted. Plaintiffs have not pleaded any personal involvement of any of the State Commissioners, and this Court lacks jurisdiction to hear plaintiffs' remaining arguments, which are in any event meritless. The State is immune from plaintiffs' official capacity claims because it is well established that Congress did not abrogate State sovereign immunity by passing Section 1983, and because participation in Medicaid does not constitute a waiver of sovereign immunity. I'm really struggling to hear me question your colleague as well about this question of prospective injunctive relief. I understand the bulk of what we heard from Mr. Mayon was we want money, but if you look at the complaint, it alleges continuing ongoing improper expense reimbursements. The prayer for relief includes directing the defendants to adhere to Federal law in connection with this, and we've heard him say that the improper reimbursement process is continuing. It may become moot, but at this point it's continuing. Isn't that a claim for prospective injunctive relief that wouldn't be barred by sovereign immunity, even if he loses all the claims, if they lose all their claims for the money? I'm not sure I agree with that, Your Honor, and I'm not seeing anywhere in the prayer for relief where they're seeking to remedy an ongoing violation of Federal law. They do seek in paragraphs B and D of the prayer for relief to remedy what they allege are ongoing violations of State law, but as we argued below, that is barred by Pennhurst. The Ex parte Young Doctrine does not, Federal courts do not have jurisdiction to order State officials to stop ongoing violations of State law. So it's ultimately what some of Your Honors were saying earlier, is that there's really no connection between the harms that they're alleging and any ongoing specific violations of specific provisions of Federal law. Sometimes even when you're getting injunctive relief, you can get money, right? Sometimes if there's a specific pot of funds that are at issue, disposition of which needs to be determined. So even though you normally think about money awards as damages, sometimes it's injunctive relief. And so why isn't this the kind of case where, look, they're entitled to a very specific reimbursement, right? There's money for Medicaid reimbursements, and that's being withheld from them. Why doesn't that make the Ex parte Young exception? So I have two responses to that, one legal and one factual. And the legal response to that is that the Supreme Court has foreclosed this in Edelman against Young. There, it's very clear that if you identify a specific ongoing violation of Federal law and ancillary to remedying that violation, there may be some money that flows from the State to the plaintiffs. That's acceptable. But even in that case, even when that program was, excuse me, even when the State officials were ultimately enjoined from delaying adjudication of these applications, the Court still held that retrospective reimbursement of those same benefits was barred. And this Court has held the same thing in New York City Health and Hospitals v. Perales. I think the case law is quite clear that even if you are entering an order enjoining an ongoing violation of Federal law, that violations that have occurred in the past are barred by the Eleventh Amendment. And the second is factual. The complaint doesn't really say this, but plaintiffs at no point after they received their Medicaid cards in the mail were required to spend money out of pocket. It's not at all the case. They were not. I'm sorry. Could you repeat that? Plaintiffs at no point after receiving their Medicaid cards were required to spend money out of pocket. Well, they've alleged otherwise, haven't they? They allege that they're continuing to be tagged for copays. So the reason that they're alleging that is because, for lack of a better term, they did not follow the proper rules and procedures. They were told, use your – and some of this is in their complaint – use your private insurance card as your primary card. Use your Medicaid card as your secondary card. So what they should have done is identify doctors who took both types of insurance, presented both cards, and for office visits, if you're a Medicaid recipient, there is no copayment. But they didn't want to see doctors who took Medicare. They wanted to see doctors who took only their primary insurance. This is outside the complaint, though. There are many things – sure. It's outside the complaint, but – And it's a reason why it might not prevail on the merits, but it's not a reason why the Eleventh Amendment would bar their suit, right? Well, again, Your Honor, I think that the Eleventh Amendment bars any claims they have for copays that they allege were – Right. Exactly. I've had a chance to flip to page A79, which is in paragraph D, which you cited. You said they're not making a Federal claim. When I read the prayer for relief, it's to direct defendants to implement required EPSDT third-party coverage, outreach, receive necessary Medicaid education on the above and on medical necessity, and agree to adhere to Federal law in return for Federal dollars. I construe that as a request for an order to comply with Federal law, which they contend the State is not doing. So I'd just like to point out that the administrative directive, 87 ADM, that's a State policy, non-Federal policy. And seeking an injunction that the State adhere to Federal law in exchange for Federal dollars doesn't satisfy 12b-6 and doesn't identify any plausible – I mean, it really just says Federal law. I don't think that – Well, they've alleged, right, that the State is requiring – and they may be wrong for all sorts of reasons, but they've alleged that the State is requiring a Medicaid family or Medicaid-eligible family to make payments out of pocket that a Medicaid-eligible family shouldn't have to make. Isn't that a plausible Federal – violation of Federal law? It's not. I understand Your Honor's concern, but it's not, because what they're – the source of that right that they're alleging are State policy documents describing this FHPPAP program. They have not identified – there are Federal – there are Federal regulations that say that Medicaid families do not need to participate in cost-sharing, but this right to reimbursement that they keep referring to, or this idea that they would have to somehow go out of pocket, that is – that is all related to this FHPPAP program. But doesn't their complaint cite 42 CFR 447.56, which prohibits cost-sharing for disabled kids, and it's saying that the family can't be required to pay premiums, co-pays, and deductibles? Isn't that the Federal complaint? I'm sorry if I was unclear, Your Honor. That is what the Federal regulation says. But they – there needs to be a corresponding allegation that the State is somehow making them pay cost-sharing expenses. And that – that comes from the State policy FHPPAP documents, which in their reply, again, they admit they were not on. And even if they were on it, that program has been discontinued, and so this cannot be the basis for any ongoing violation of Federal law. I thought the basis for their claim that they were being required to participate in cost-sharing was their lived experience that they're getting bills that they shouldn't get, not some State policy. Understanding the complaint? So what that regulation provides is that certain classes of Medicaid enrollees are not required to pay, for example, co-payments. But they need to also identify something the State – something that the State officials are doing in their official capacity that is making them pay these co-payments. Some sort of law or policy or regulation that they're following and there isn't one. It only comes out of these FHPPAP documents, which, again, the program has been discontinued, and plaintiffs themselves in their reply brief admit – Well, the State's declining to pay, right? They've asked. They said, here, pay these. And the State's saying no. Isn't that the official State action that they're challenging? This may conceitedly bleed a little bit into 12b-6 territory, but if you were – I'm sorry. I'm sorry. Into what? Oh, 12b-6 territory. But if an individual is a Medicaid recipient and that individual decides, I don't want to see a Medicaid doctor. I would like to see a doctor who takes no insurance. I'm going to pay that doctor out of pocket, and then I'm going to submit the claim to the State for reimbursement. And the State denies that claim. That does not allege an ongoing violation of Federal law. It's true that that person may not have any cost-sharing responsibilities under the Federal statutes, but what is the State statute that required them to incur those cost-sharing expenses? Why don't you win on summary judgment below then? Why doesn't that – I'm just trying to figure out how we get there on the pleadings. Because the only source of State law that they're identifying that is in any way – that they claim is in any way requiring them to incur these expenses in the first place are these FHBPAP documents. And that program has been discontinued. We've cited the State law repealing it in our briefs. So there's just no ongoing – so that's the only source they've identified, and that program is not ongoing. And so there's no – there's nothing that's requiring them to incur these costs. Except they're saying they're putting in their claims and they're getting denied. Yes, but again, while the Federal laws say there can be no cost-sharing, that is referring to things like copayments, coinsurance. But there needs to be – if you're suing State officials for a violation of Federal law, your cost-sharing claim cannot be, well, I did not choose to see any Medicaid doctors. I chose to pay – I chose to see a doctor who takes no insurance. This is hypothetical, admittedly. I chose to see a doctor who takes no insurance. I submitted my claim to the State, and the State denied reimbursement. What is the violation of Federal law that that official has done by – To have a plausible claim, they need to plead that they complied with all of the necessary State requirements for securing the Federally guaranteed payments. Is that a fair – Right. Or at least that there is some – or at least – and again, as counsel in a previous case was saying, I'm not trying to be hyper-technical here, but there does have to be some part of State law or something that they've identified that requires them to pay these costs out of pocket first, and that obligates the State officials, the defendants in the suit, to reimburse them. And the only thing they've identified is this FHPPAP program, which no longer exists, and therefore cannot be the basis of an Eleventh Amendment. Thank you. Unless anyone has other questions. So why did you provide these two different opinions for the first and second complaints, one dealing with the claims and one on the thresholds grounds? So I was not trial counsel, but the way I understand it is that once the plaintiffs secured counsel, the district courts who responded granted them leave to amend their pro se complaint, and the First Amendment complaint was filed, and that was dismissed on grounds that were some threshold. Against the parents, there was a race judicata decision. And then against the children, a de novo decision on the procedural due process claims. The district court, again, to respond, they said, you have an opportunity to amend your complaint a second time to address these deficiencies. And while the State made many of the same arguments in our motions to dismiss both complaints, the district court ultimately decided on threshold grounds. Thank you. Counsel. Good morning, Your Honors. May it please the Court. My name is Lorraine Feiden. I'm an assistant Rockland County attorney. And I'm here today representing the county appellees. By virtue of this action, the appellant Mayon children are attempting to improperly receive additional Medicaid reimbursement for their medical and travel expenses related to their medical issues. The vexatious litigant Mayon family has already received and continues to receive hundreds of thousands of dollars in reimbursements, but they are insatiable in their pursuit of money from the Medicaid system. Many of the items. If they're entitled to the money, there's nothing. There's no question. There's no question. There's no question about that. You're right. That's the question that we're trying to sort through. There's no question that they're entitled to receive benefits when they're in compliance with the regulations that Medicaid imposes. A number of their, the items for which they seek reimbursement are non-reimbursable expenditures. For example, a diaper genie, not on Medicaid, and restaurant meals for when they go to see specialists. And as Ms. Brody explained, they're required as Medicaid recipients to see providers that are participants in Medicaid and their insurance. And just as an aside, Mr. Attorney Mayon was alleging that they were asked to remain on their private insurance, which was Blue Cross Blue Shield, because I think he said something that it was cost effective to the county and the state. That is not the case. Ms. Osler asked to keep her primary insurance. Is that what the complaint alleges? That's what he just said right now, so I'm just responding to that. No, no. I'm just trying to figure out. We're trying to, I want to separate sort of the arguments that are going to be relevant if this case goes forward with the arguments that are relevant to this threshold issue of dismissal. That's all. Yes, yes. I appreciate that. I think it is in the complaint, in fact, but I don't know for sure. But like I said, as Ms. Brody was saying, they have to pick providers that are in Medicaid and they're private in order to get reimbursement. They can't just pick a doctor and go to that doctor and expect to be reimbursed with no contribution whatsoever. They also can't expect a doctor who says the child needs A, B, and C for those wishes or directives to be reimbursed 100%. It doesn't work that way. It has to be, it has to, those expenses have to be in compliance with the system. There are checks and balances in Medicaid. There's fraud prevention in Medicaid. And there are rules, as we know, for money, you know, that can be taken out of the public treasury. And the Mayon plaintiffs have not followed those rules. I think there's 14 or so court cases where they've been denied and they keep appealing and trying different venues in their, in their quest, their never-ending quest to have all of the expenses which they deem necessary and whatever doctors they see deem necessary. And it just doesn't work that way. They're trying to convince this Court that they're not receiving due process. So they're saying they're not getting due process, but meanwhile, as Judge Furman said, they're, they're, they're getting too much process, which is what they object to, because they don't want their expenses that they're applying for to be reviewed. They just want to be paid what they think they should be paid. Thank you very much. Thank you. I'm going to draw your attention to the appendix to A-98 and A-99. A-98 is a letter from the County of Rockland. It's to Ms. Osler. Now, what did that do? It put them in a situation where, if you listen to Ms. Brody, you could go down a rabbit hole, because they said to them, here's your, here's your Medicaid card. Use your Medicaid card. Your doctor doesn't necessarily take Medicaid card. So if you have two children who are disabled from birth, born nine weeks prematurely and had all kinds of issues, that's what you should do. You should shop around for another doctor who will take a Medicaid card, because they put them in this program. Wouldn't it be the case if they had enrolled in a straight-up Medicaid HMO, never gone through this other program, that they would be limited to the doctor? Absolutely, Your Honor. They wouldn't have their choice of any doctor. Absolutely. But they didn't do that. The State put them in this program. They told them, use your private insurance. They want them to use the Medicaid card, but doctors won't take it. So what's the answer to the argument that, yeah, they may be entitled to full, be made whole, or may have been entitled to not pay various things, but only if they comply with the requirements of the program, whether it relates to how quickly they got receipts in for travel or the scope of the request, and in the absence of complying with the requirements. So the argument is that they're not, shouldn't be in a better position than a participant in a full-blown Medicaid HMO that didn't comply. You're absolutely correct, Your Honor. The problem is the way they set this up for them, and I don't know, this may be a case of first impression. I have no idea how many other families are involved in a situation like this, but the way they set it up, they had to stay in their network to use their private insurance. And when you go to a doctor, as an officer of the court, I'm going to tell you this is the God's honest truth. Anecdotally, I went to a doctor last week, and they told me, we don't take Aetna. I said, I don't have Aetna as my backup. I have United. They said, no, the last time you were here, you had Aetna. And it turns out that there's a Louis Mahoney with an M initial, not a J initial. It wasn't me. That doctor wouldn't take Aetna. Most of these doctors are not taking Medicaid. So what do you do? You go to a doctor, one doctor in that suite says, oh, yeah, okay, this is fine, I'll take Medicaid. The other guy or gal says, no, you have to now find another doctor. This all happened because of what the State did. And I understand the argument to be that because you're in this program, you've got to find a doctor that takes both insurance, the Blue Cross or whatever the primary is, and Medicaid. Are you saying that such doctors don't exist? I'm not saying such doctors don't exist, but it's ‑‑ I don't know how you do it except to do a survey. They were already going to these doctors for the two children for a number of years. And by the way, Ms. Feigin made a terrible misstatement when she said about doctors' challenges. There isn't one issue in this case where the State ever raised medical necessity. And we were not talking about that in respect of today's argument. Today's argument is whether the plaintiffs stated a plausible claim. But the State, a bureaucrat, does not decide at all whether your doctor is right or wrong without them getting a doctor and saying the doctor is wrong and here's why we don't agree. Once you get a prescription, you follow it. That's what Medicaid has to do. That's the way they're supposed to do it. And as far as Judge Furman goes, there's another rabbit hole. Judge Furman, in the first case, told the adult plaintiffs, listen, you can't bring your action here in respect of transportation issues. All the due process that you need is back at the administrative level before the State. That's all he said. I've got one just quick question. Sure. I'll try to wrap it up. So the State says that the FHPPAP program regulation was discontinued. Yeah. Is that correct? Yes, it was. It was repealed. It was revoked, I should say, after the Affordable Care Act. And the other part of that argument was that that's the only source of State law that you really rely on. Is that also correct? No. I mean, they never were in that program. Medicaid qualified recipients cannot be in that program. That's the craziness of this. Why would that guy give them an application? Thank you. Thank you, Your Honor. We'll reserve the decision.